# Exhibit 8

# LIONBRIDGE

STATE OF NEW YORK      )
                       )
                       )     ss
                       )
COUNTY OF NEW YORK     )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Danish into English of the attached document U.2001.893H. I affirm that the linguist responsible for producing this translation is fluent in both the Danish and English languages.

_____

Lynda Green, Senior Managing Editor
Lionbridge

Sworn to and subscribed before me

this 5th day of June, 20 22.

_____

LAURA E MUSICH
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MU6386791
Qualified in Queens County
My Commission Expires 01-28-2023

259 W 30th Street, 11th Floor  New York, NY 10001  +1.212.631.7432

U.2001.893H

***Shares acquired for tax purposes at the time of the transfer of ownership rights.***

*Income taxes 21.3 and 5.5.*

- In 1990, three brothers, A, B, and C, and the private limited company, D, founded a private limited company, S. The initial capital in S was nominally DKK 90,000. As of December 31, 1993, S's equity was negative by approx. DKK 2.7 million. On September 1, 1994, C transferred his shares to A and B; shares belonging to D were simultaneously transferred to A. On September 30, 1994, S's capital was increased by nominally DKK 1,000 at a price of DKK 260,000. A and B, who each had a proportional pre-emption right to the shares, subscribed nominally for shares at DKK 620 and DKK 680, respectively. On December 28, 1994, A and B sold all their shares in S to another company, P, owned by A, B, and C and their father. The High Court and the Supreme Court pronounced that the rules of the Danish Capital Gains Tax Act [*Aktieavancebeskatningslov*] on the time of acquisition of shares must be understood in accordance with the rules of the law of obligations, so that the acquisition takes place at the time of transfer of ownership rights by transfer or otherwise.

**894**

Regardless of the fact that the transfers on September 1, 1994, had been made at a price of 0, A and B had also acquired the shares for tax purposes at that time. The shares A and B newly subscribed for on September 30, 1994, were to be considered acquired at the same time as the parent shares, cf. Section 6(4) of the Danish Capital Gains Tax Act, and should therefore, with regard to the calculation of the time of acquisition, be distributed proportionally to the shares that were owned for more or less than three years. As the shares with an ownership period of more than three years were worthless on May 19, 1993, the loss relating to A's and B's holdings was not deductible at that time, cf. the transfer provision in Section 19(3), Act no. 421 of June 25, 2993. The tax authorities were therefore complied with in that A and B could neither deduct losses nor be taxed on gains regarding shares acquired in 1990.[1]

**H.D. January 31, 2001 in Case 28/2000**

*Peter Karlborg and Stefan Lennart Karlborg (Gabriel Rohde, Attorney, Copenhagen)*

against

*Ministry of Taxation* [Skatteministeriet] *(Legal Adviser to the Government, Represented by H.C. Vinten, Attorney, Copenhagen)*

**High Court of Western Denmark** [*Vestre Landsret*]

***Judgment of the High Court of Western Denmark, November 25, 1999 (6th Division)***

(Jochimsen, Helle Bertung, Stig Glent-Madsen).

On August 27, 1997, the National Tax Tribunal [*Landsskatteretten*] issued the following ruling concerning the determination of the Applicant, Peter Karlborg's, income for the income year 1994:

"…

The complaint concerns the calculation of income on the following point:

|  |  |
|---|---|
| *Income year 1994* | |
| *Stock income* | |
| Deduction for loss of stocks declared on tax return not approved | DKK 1,467,926 |
| Income simultaneously increased by calculated profit for shares owned for more than 3 years | DKK 33,912 |
| *Capital income* | |
| Income simultaneously increased by calculated profit for shares owned for less than 3 years | DKK 53,364 |

On July 1, 1990, the Plaintiff, together with Stefan Karlborg, Michael Karlborg, and Pestemi ApS [*anpartsselskab* (private limited company)], founded Primera Invest of 1990 ApS (hereinafter, "Primera"). Michael Karlborg and Stefan Karlborg are the Plaintiff's brothers. Each of the brothers owned 1/3 of Pestemi ApS. The initial capital in Primera was nominally DKK 90,000, and it was distributed with nominally DKK 24,000 to Pestemi ApS and nominally DKK 22,000 to the three brothers, as the capital was paid at a price of 100.

Based on the lodged balance sheet for Primera as of December 31, 1993, the company's equity as of December 31, 1992 was negative by DKK 1,644,685 and, as of December 31, 1993, was negative by DKK 2,794,784.

At the same time, it is stated that as of December 31, 1993, the Plaintiff had accounts receivable with Primera of DKK 1,555,202.

On September 1, 1994, Michael Karlborg transferred nominally DKK 10,000 of his shares to the Plaintiff, while the remaining nominally DKK 12,000 of the shares were transferred to Stefan Karlborg. The Primera shares of Pestemi ApS were also transferred to the Plaintiff, nominally DKK 24,000. All shares were transferred at a price of 0.

On September 30, 1994, a special general meeting of Primera was held, whereby the company's capital was increased by nominally DKK 1,000. The increase took place at a price of 260,000 and, according to the agreement, was to be made by cash payment at a total of DKK 2,600,000. The previous shareholders, i.e., the Plaintiff and Stefan Karlborg, each had a proportional pre-emption right to the shares and thus subscribed for nominally:

|  |  |
|---|---|
| Plaintiff: | DKK 620 |
| Stefan Karlborg: | DKK 380 |

Following the increase in capital, Primera's initial capital was distributed as follows:

|  |  |
|---|---|
| Plaintiff: | DKK 56,620 |
| Stefan Karlborg: | DKK 34,380 |

---

[1] U 1998.1116 H, FT [*Folketingstidende*] 1992/93, Appendix A, Column 9541 f, *Preben Poulsen og Søren Rasmussen: Aktieavancebeskatning* [Preben Poulsen and Søren Rasmussen: Danish Capital Gains Tax] (1995), p. 43 et seq. and Arts. 2.5 and 3.3.3. of Circular no. 137 dated July 19, 1994.

Consequently, the Plaintiff had to deposit DKK 1,612,000 as a result of the increase in capital. This payment was made with the value date on October 31, 1994, and was financed by the Plaintiff taking a loan from his bank.

With the value date on December 20, 1994, Primera paid the Plaintiff's accounts receivable, DKK 1,555,202 to the Plaintiff.

By agreement dated December 28, 1994, the Plaintiff and Stefan Karlborg sold all their shares in Primera to Lennart Karlborg A/S.

Lennart Karlborg A/S was a company owned by the three brothers and their father, Lennart Karlborg. The transfer sum was agreed upon at DKK 267,000 and was distributed as DKK 166,074 to the Plaintiff and DKK 100,926 to Stefan Karlborg.

In submitting his tax return for the income year 1994, the Plaintiff declared DKK 1,467,926 of losses in his stock income relating to Primera.

The loss declared on the tax return was as follows:

**895**

| | |
|---|---:|
| Purchase shares July 1, 1990, nominally DKK 22,000 at a price of 100 | DKK 22,000 |
| Purchase shares September 1, 1994, nominally DKK 34,000 at a price of 0 | DKK 0 |
| Share increase, October 31, 1994, nominally DKK 620 at a price of 260,000 | DKK 1,612,000 |
| Total acquisition amount | DKK 1,634,000 |
| Total sales amount | DKK 166,074 |
| Total losses | DKK 1,467,926 |

At the time of the contested appointment, the local tax authorities did not approve the share loss of DKK 1,467,926 declared on the tax return. The authorities instead increased the Plaintiff's share income by DKK 33,912 for shares owned for more than three years and increased the Plaintiff's capital income by DKK 53,364 for shares owned for less than three years. Reference is made to Sections 2, 4, and 5 of the ABL.

The authorities' profit statement is as follows:

| | |
|---|---:|
| Purchase of shares July 1, 1990, nominally 22,000 at a price of 100 | DKK 22,000 |
| Purchase of shares September 1, 1994, nominally 34,000 at a price of 0 | DKK 0 |
| Capital increase October 30, 1994, nominally DKK 620 to the deposited amount, less the Plaintiff's accounts receivable, which is repaid (DKK 1,612,000 - DKK 1,555,202) | DKK 56,798 |
| Total acquisition amount for shares Total sale price | DKK 78,798 |
| Profit | DKK 166,074 |
| which is distributed as follows: | DKK 87,276 |
| For shares owned for *less* than 3 years: DKK 34,620/56,620 x 87,276 taxed as capital income. | DKK 53,364 |
| For shares owned for *more* than 3 years: DKK 22,000/56,620 x 87,276 taxed as stock income. | DKK 33,912 |

The authorities have stated, among other things, that the capital increase made cannot be regarded as having been made in cash, but must in fact be regarded as having been made as a debt conversion, *that* the Plaintiff in the proceedings has attempted to convert a non-deductible loss of assets on a claim into a deductible loss on shares, *that* the Plaintiff's claim on the company must be regarded as having been genuinely worthless at the time of conversion. Reference is made to TfS 1995.540 Lsr.

The Plaintiff's attorney has filed a claim with the National Tax Tribunal that losses on the shares, DKK 1,467,926, in the Plaintiff's share income are approved as deductible.

To this end, he has argued, i.a., *that* the loss of shares owned for more than three years should be treated equally, in support of which, reference is made to TfS 1996.654 H. It is further stated, i.a., that there is no basis for overriding the cash increase and registered capital increase and considering it to have taken place by debt conversion, that the company will not repay the company's debt to the shareholders by December 28, i.e., ca. 3 months after the decision on the capital increase, that, in a similar case before the High Court of Eastern Denmark [*Østre Landsret*], the Ministry of Taxation has responded in the affirmative, cf. TfS 1997.242, commented on in TfS 1997.249.

**The National Tax Tribunal hereby pronounces:**

The National Tax Tribunal finds, with reference to the fact that the Ministry of Taxation has responded in the affirmative in TfS 1997.242 ØLD, commented on in TfS 1997.249, in a case which in principle relates to the same issue as the present case, that there is no basis for considering

the capital increase made by the Plaintiff to be cash-generating as actually done by debt conversion.

Regarding the calculation of the loss on the shares in Primera, the Court must first note that the calculation takes place in accordance with Section 6 of the ABL, cf. Section 4, as far as the shares owned for less than three years are concerned. However, cf. Section 2(3)(2) of the ABL, due to the fact that these are unlisted shares disposed of on or after November 18, 1993, cf. Section 2(1) of Act no. 1117 of December 22, 1993, cf. Section 16. This means, inter alia, that the profit statement with the determination of both acquisition and disposal sums takes place according to the standard method.

The Court must further note that TfS 1996.654 H, which the attorney has referenced, pertains to the processing of shares acquired through the exercise of allotted share rights and subscription rights, cf. Section 6(8) of an earlier version of the ABL and Sections 6(5) and 5(3) in today's version of the ABL. The shares in Primera the Plaintiff bought from his brother and Pestemi ApS through an agreement signed on September 1, 1994, at a nominal total of DKK 34,000 are not covered by these provisions. However, it is taken into account that the Plaintiff's acquisition of nominally DKK 620 in the capital increase on September 30, 1994, occurred as a result of the exercise of an allotted subscription right, cf. Section 6(5). These shares of nominally DKK 620 must be distributed proportionally to those of the Plaintiff's shares that are owned for more and less than 3 years, i.e., at nominally DKK 22,000 resp. at nominally DKK 34,000, cf. Section 6(5) of the ABL. The Plaintiff's loss on shares owned for less than three years now amounts to DKK 891,230, cf. Section 6 of the ABL, which can be off set and carried forward in profits on corresponding securities, cf. Section 2(2) of the ABL. On shares owned for more than three years, on the other hand, the Plaintiff has not incurred a deductible loss, as the loss is limited as a result of the Plaintiff being a minority shareholder in Primera on May 18, 1993, cf. Section 19(3)(3) of Act no. 421. Following receipt of information on Primera's financial circumstances, the Court has estimated the market value of the Plaintiff's shares in the company on May 19, 1993, to be DKK 0.

The contested appointment is amended accordingly.

**896**

***The following is determined:***

| | |
|---|---|
| *Income year 1994* | |
| *Stock income* | |
| Unapproved deduction for share loss declared on tax return, DKK 1,467,926. | Confirmed. |
| The income is also increased by the calculated profit for shares owned for more than 3 years by DKK 33,912, | |
| reduced to | DKK 0 |
| *Capital income* | |
| The income is also increased by the calculated profit for shares owned for less than 3 years by DKK 53,364, | |
| reduced to | DKK 0 |
| Instead, the Plaintiff has a loss which may be carried forward on shares owned for less than 3 years, cf. Section 2(2) of the ABL of | DKK 891,230 |
| …" | |

On August 27, 1997, the National Tax Tribunal issued a similar ruling concerning the determination of the Applicant Stefan Lennart Karlborg's income for the income year 1994. The actual events of Stefan Lennart Karlborg's acquisition and sale of shares in Primera Invest af 1990 ApS correspond to the circumstances described in the National Tax Tribunal's ruling concerning Peter Karlborg. The ruling concerning Peter Karlborg further explains the extent to which Stefan Lennart Karlborg acquired and sold shares as well as the subsequent distribution of the contributed capital.

The National Tax Tribunal's ruling concerning Stefan Lennart Karlborg stated that Stefan Lennart Karlborg had accounts receivable from Primera Invest af 1990 ApS of DKK 963,588 on December 31, 1993, that Stefan Lennart Karlborg, as a result of the capital increase with the value date on October 31, 1994, deposited DKK 988,000, that the amount was financed by a loan taken from Stefan Lennart Karlborg's bank, and that Primera Invest af 1990 ApS with the value date on December 20, 1994 paid Stefan Lennart Karlborg's accounts receivable with DKK 963,588. The National Tax Tribunal's ruling concerning Stefan Lennart Karlborg also states:

"…

The complaint concerns the calculation of income on the following point:

| | |
|---|---|
| *Income year 1994* | |
| *Stock income* | |
| Deduction for loss of stocks declared on tax return not approved | DKK 909,074 |
| Income simultaneously increased by calculated profit for shares owned for more than 3 years | DKK 28,485 |
| *Capital income* | |
| Income simultaneously increased by calculated profit for shares owned for less than 3 years | DKK 16,029 |
| … | |

In submitting his tax return for the income year 1994, the Plaintiff declared DKK 909,074 of losses in his stock income relating to Primera.

The loss declared on the tax return was as follows:

| | |
|---|---|
| Purchase shares July 1, 1990, nominally DKK 22,000 at a price of 100 | DKK 22,000 |
| Purchase shares September 1, 1994, nominally DKK 12,000 at a price of 0 | DKK 0 |
| Share increase, October 31, 1994, nominally DKK 380 at a price of 260,000 | DKK 988,000 |
| Total acquisition amount | DKK 1,010,000 |
| Total sales amount | DKK 100,926 |
| Total losses | DKK 909,074 |

At the time of the contested appointment, the local tax authorities did not approve the share loss of DKK 909,074 declared on the tax return. The authorities instead increased the Plaintiff's share income by DKK 28,485 for shares owned for more than three years and increased the Plaintiff's capital income by DKK 16,029 for shares owned for less than three years. Reference is made to Sections 2, 4, and 5 of the ABL.

The authorities' profit statement is as follows:

| | |
|---|---|
| Purchase of shares July 1, 1990, nominally 22,000 at a price of 100 | DKK 22,000 |
| Purchase of shares September 1, 1994, nominally 12,000 at a price of 0 | DKK 0 |
| Capital increase, October 31, 1994, nominally DKK 380 to the deposited amount, less the Plaintiff's accounts receivable, which is repaid (DKK 988,000 - DKK 953,588) | DKK 34,412 |
| Total acquisition amount for shares | DKK 56,412 |
| Total sale price | DKK 100,926 |
| Profit | DKK 44,514 |
| which is distributed as follows: | |
| For shares owned for *less* than 3 years: 12,380/34,380 x DKK 44,514 which is taxed as stock income. | DKK 16,029 |
| For shares owned for *more* than 3 years: 22,000/34,380 x DKK 44,514 which is taxed as stock income. | DKK 28,485 |
| … | |

The Plaintiff's attorney has filed a claim with the National Tax Tribunal stating that losses on the shares, DKK 909,074, in the Plaintiff's share income are approved as deductible.
…"
Apart from the differences arising from the fact that the Applicants did not own the same number of shares in Primera Invest af 1990 ApS, the National Tax Tribunal's premises in the case concerning Stefan Lennart Karlborg are identical to the premises in the case concerning Peter Karlborg.

The conclusion of the ruling is as follows:

**897**

| | |
|---|---|
| *"Income year 1994* | |
| *Stock income* | |
| Deduction for loss of stocks declared on tax return not approved, | Confirmed. |
| The income is also increased by the calculated profit for shares owned for more than 3 years by DKK 28,485, | |
| reduced to | DKK 0 |
| *Capital income* | |
| The income is also increased by the calculated profit for shares owned for less than 3 years by DKK 16,029, | |
| reduced to | DKK 0 |
| Instead, the Plaintiff has a loss which may be carried forward on shares owned for less than 3 years, cf. Section 2(2) of the ABL of | DKK 320,846 |

…"

During this case, which was established on November 26, 1997, the Applicants have principally claimed that the Defendant, the Ministry of Taxation, is obliged to acknowledge that the Applicant Karlborg can deduct share losses of DKK 1,467,926 in the calculation of share income for the 1994 income year, and that the Applicant Stefan Lennart Karlborg can deduct share losses of DKK 909,074 in the calculation of share income for the income year 1994. In the alternative, the Applicants claim that their tax assessments for the 1994 income year should be remanded to the tax authorities for reconsideration.

The Defendant has claimed acquittal.

In support of their principal claim, the Applicants claim that the Applicants have correctly calculated the loss on their shares in Primera Invest af 1990 ApS, as the shares have been owned for tax purposes for more than three years, and as such the taxation must take place pursuant to Section 4 of the Danish Capital Gains Tax Act, cf. Section 4a(1)(4) of the Personal Income Tax Act. There is no legal basis for the division made by the tax authorities in the case of a total divestment of shares. The Applicants' acquisition of shares on September 1, 1994, is of no independent significance, since the acquisition took place at a price of 0 and since the sellers had no interest in the company. The Applicants had already obtained pre-emption rights to the total capital increase by the company's incorporation in 1990, and the shares they acquired on September 30, 1994, must, pursuant to Section 6(4) of the Danish Capital Gains Tax Act, be considered acquired at the same time as the parent shares in 1990.

**898**

It should be noted that even before the acquisition of the shares on September 1, 1994, the Applicants together owned more than 50% of the shares and thus had the opportunity to decide on the capital increase.

If the High Court does not find that all the shares were acquired for tax purposes at the time of incorporation in 1990, a separate profit calculation should be made of the shares acquired on September 1, 1994. In which case, the case would need to be remanded to the tax authorities for reconsideration. Furthermore, the case must be remanded if the High Court finds that Section 19(3) of Act no. 421 dated June 25, 1993, may be applicable to the present case. Since the Defendant lacks authority for the distribution of shares, it is disputed that this transitional rule is significant.

However, this may only apply to the shares distributed by time of incorporation, as the shares acquired by the capital increase were issued by virtue of a subscription right which was only exercised after May 18, 1993. The Applicants agree that the market value of the shares on May 19, 1992, was 0.

In support of its claim for acquittal, the Defendant claims that the National Tax Tribunal's statement of the Applicants' share income for 1994 is correct and that the Applicants' argument that the ownership period exceeds 3 years for all the shares sold has no legal authority. It follows from the general rules of the law of obligations in the Danish Capital Gains Tax Act that "acquisition" takes place at the time of transfer, meaning it does not matter whether the transfer on September 1, 1994, which took place by signing fund notes, took place at a price of 0. Since the period of ownership is less than three years for the part of the Applicants' shares acquired on September 1, 1994, the shares issued on September 30, 1994, must be distributed in proportion to the parent shares acquired on July 1, 1990, and September 1, 1994, cf. Section 6(4) of the Danish Capital Gains Tax Act. In the profit statement pertaining to the parent shares acquired in 1990, the transfer provision in Section 19(3) of the above-mentioned Act becomes significant, as the market value of the shares on May 19, 1993, must be assumed to have been 0. An overall calculation means that, per the outcome of the National Tax Tribunal's rulings, the Applicants can neither deduct a loss nor be taxed on a gain in respect to the shares acquired in 1990.

**The High Court's reasoning and result:**
The rules of the Danish Capital Gains Tax Act on the time of acquisition of shares must, pursuant to the rules of the law of obligations, be understood as meaning that the time of acquisition is the transfer of ownership rights by transfer or otherwise. The Applicants' acquisition of shares in Primera Invest af 1990 ApS on September 1, 1994, took place in accordance with issued fund notes, signed by both the Applicants and the sellers, and the Applicants only acquired ownership rights of the shares in question at that time. It is considered irrelevant that the transfers took place at a price of 0. Thus the Applicants' date of acquisition of those shares is September 1, 1994. The shares issued at the capital increase on September 30, 1994, must, pursuant to Section 6(4) of the Danish Capital Gains Tax Act, be considered acquired at the same time as the parent shares. The parent shares were acquired at the company's incorporation on July 1, 1990, and at the acquisition on September 1, 1994, respectively. The newly subscribed shares on September 30, 1994, must then be distributed proportionally with regard to the calculation of the acquisition date as in the National Tax Tribunal's rulings. Under these circumstances, and since the Applicants have not cited any evidence justifying the repatriation of the case in the alternative, the High Court upholds the Defendant's claim for acquittal.

— — —

The Applicants, Peter Karlborg and Stefan Lennart Karlborg, are jointly and severally liable for the payment of DKK 30,000 in legal costs to the Defendant.

**Supreme Court**

**Judgment of the Supreme Court.**
In a previous instance, a judgment was issued by the 6th Division of the High Court of Western Denmark on November 25, 1999.

Five judges participated in the verdict: Hornslet, Wendler Pedersen, Børge Dahl, Poul Søgaard and Jytte Scharling.

The Appellants, Peter Karlborg and Stefan Lennart Karlborg, waived their principal claim and only claimed that their tax assessments for the income year 1994 be remanded for re-examination by the tax authorities. The Respondent, the Ministry of Taxation, filed the following claim: The Ministry of Taxation recognizes that Peter Karlborg's and Stefan Lennart Karlborg's capital income for the income year 1994 is reduced by DKK 6,326 and DKK 6,505, respectively.

The case was dealt with in writing, cf. Section 387 of the Administration of Justice Act [*retsplejelov*].

**Supreme Court remarks.**
The Supreme Court agrees, for the reasons stated by the High Court, that the shares acquired by the Appellants on September 1, 1994, must also be considered acquired for tax purposes at that time, that the shares they newly subscribed for on September 30, 1994, must be considered acquired at the same time as the parent shares, and must therefore be distributed proportionally as was determined in the National Tax Tribunal's rulings.

The Appellants' losses on shares owned for less than three years then constitute the amounts in the National Tax Tribunal's rulings.

The loss relating to the Appellants' holdings of shares with an ownership period of more than three years constitutes the difference between the

share of these holdings in the compensation amount and the acquisition amount calculated using the standard method, respectively. Because the shares were worthless on May 19, 1993, the loss relating to the Appellants' holdings at that time is not deductible, cf. the transfer provision in Section 19(3) of Act 421 dated June 25, 1993. The deductible loss therefore constitutes only the part of the total loss which corresponds to the ratio between the newly nominated shares in 1994, which are included in the holding with an ownership period of more than three years, and the total holding with a holding period of more than three years. This loss constitutes the amounts for which the Ministry of Taxation recognizes the right to deduct. As such, the Supreme Court upholds the judgment with the amendment that follows from the Ministry of Taxation's claim.

**It is held that:**
*The High Court's judgment is upheld with the amendment that the Respondent, the Ministry of Taxation, must recognize that the capital income for the income year 1994 for the Appellants, Peter Karlborg and Stefan Lennart Karlborg, is reduced by DKK 6,326 and DKK 6,505, respectively.*
*In legal costs before the Supreme Court, the Appellants are jointly and severally liable for the payment of DKK 30,000 to the Respondent.*
*The determined legal costs must be paid within 14 days after the delivery of the decision of this Supreme Court.*

Case 1:18-md-02865-LAK   Document 1073-8   Filed 06/24/24   Page 9 of 15

**U.2001.893H**

*Anparter skattemæssigt erhvervet på tidspunktet for ejendomsrettens overgang.*

*Skatter 21.3 og 5.5.*

♦ I 1990 stiftede tre brødre, A, B og C, og anpartsselskabet D et anpartsselskab S. Indskudskapitalen i S var nominelt 90.000 kr. Pr. 31. december 1993 var S's egenkapital negativ med ca. 2,7 mio. kr. Den 1. september 1994 overdrog C sine anparter til A og B, og D overdrog samtidig sine anparter til A. Den 30. september 1994 blev S's kapital forhøjet med nominelt 1.000 kr. til kurs 260.000. A og B, der havde forholdsmæssig fortegningsret til anparterne, tegnede nominelt anparter for henholdsvis 620 og 680 kr. Den 28. december 1994 solgte A og B samtlige deres anparter i S til et andet selskab P, der var ejet af A, B og C og disses far. Landsretten og Højesteret udtalte, at aktieavancebeskatningslovens regler om tidspunktet for erhvervelse

**894**

af anparter må forstås i overensstemmelse med de obligationsretlige regler, således at erhvervelsen sker på tidspunktet for ejendomsrettens overgang ved overdragelse eller på anden måde. Uanset at overdragelserne den 1. september 1994 var sket til kurs 0, havde A og B også skattemæssigt erhvervet anparterne på dette tidspunkt. De anparter, som A og B nytegnede den 30. september 1994, skulle anses for erhvervet samtidig med moderanparterne, jf. aktieavancebeskatningslovens § 6, stk. 4, og skulle derfor med hensyn til beregning af anskaffelsestidspunkt fordeles forholdsmæssigt på de anparter, der var ejet over og under tre år. Da anparterne med en ejertid over tre år var værdiløse den 19. maj 1993, var tabet vedrørende A's og B's beholdninger på dette tidspunkt ikke fradragsberettiget, jf. overgangsbestemmelsen i § 19, stk. 3, i lov nr. 421 af 25. juni 1993. Skattemyndighederne fik derfor medhold i, at A og B hverken kunne fradrage tab eller skulle beskattes af en gevinst for så vidt angår anparter erhvervet i 1990.[1]

H.D. 31. januar 2001 i sag 28/2000

*Peter Karlborg og Stefan Lennart Karlborg (adv. Gabriel Rohde, Kbh.)*
mod
*Skatteministeriet (Km.adv. v/adv. H.C. Vinten, Kbh.).*

## Vestre Landsret

### Vestre Landsrets dom 25. november 1999 (6. afd.)

(Jochimsen, Helle Bertung, Stig Glent-Madsen).

Den 27. august 1997 afsagde Landsskatteretten følgende kendelse vedrørende fastsættelsen af sagsøgeren Peter Karlborgs indkomst for indkomståret 1994:

». . .

Klagen vedrører opgørelsen af indkomsten på følgende punkt:

| | |
|---|---:|
| *Indkomståret 1994* | |
| *Aktieindkomst* | |
| Ikke godkendt fradrag for selvangivent aktietab | 1.467.926 kr. |
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet over 3 år | 33.912 kr. |
| *Kapitalindkomst* | |
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet under 3 år | 53.364 kr. |

Klageren stiftede sammen med Stefan Karlborg, Michael Karlborg og Pestemi ApS den 1. juli 1990 Primera Invest af 1990 ApS (herefter benævnt »Primera«). Michael Karlborg og Stefan Karlborg er klagerens brødre. Pestemi ApS var ejet af brødrene med 1/3 hver.

Indskudskapitalen i Primera var nom. 90.000 kr., og den fordeltes med nom. 24.000 kr. til Pestemi ApS og nom. 22.000 kr. til de tre brødre, idet kapitalen blev indbetalt til kurs 100.

Det fremgår af fremlagt balance for Primera pr. 31. december 1993, at selskabets egenkapital pr. 31. december 1992 havde været negativ med 1.644.685 kr. og pr. 31. december 1993 var negativ med 2.794.784 kr.

Det er samtidig oplyst, at klageren pr. 31. december 1993 havde et tilgodehavende på Primera på 1.555.202 kr.

| | |
|---|---:|
| Klageren: | 620 kr. |
| Stefan Karlborg: | 380 kr. |

Efter kapitaludvidelsen var Primeras indskudskapital fordelt således:

| | |
|---|---:|
| Klageren: | 56.620 kr. |
| Stefan Karlborg: | 34.380 kr. |

Den 1. september 1994 overdrog Michael Karlborg nom. 10.000 kr. af sine anparter til klageren, medens de resterende nom. 12.000 kr. af anparterne blev afstået til Stefan Karlborg. Pestemi ApS overdrog samtidig sine anparter i Primera, nom. 24.000 kr., til klageren. Alle anparterne blev overdraget til kurs 0.

Den 30. september 1994 afholdtes ekstraordinær generalforsamling i Primera, hvorved selskabets kapital forhøjedes med nom. 1.000 kr. Forhøjelsen skete til kurs 260.000 og skulle efter det vedtagne ske ved kontant indbetaling af således i alt 2.600.000 kr. De hidtidige anpartshavere, d.v.s. klageren og Stefan Karlborg, havde forholdsmæssig fortegningsret til anparterne og tegnede således nom.:

---

1 U 1998.1116 H, FT 1992/93, till. A, sp. 9541 f, Preben Poulsen og Søren Rasmussen: Aktieavancebeskatning (1995), s. 43 ff og Cirkulære nr. 137 af 19. juli 1994 pkt. 2.5 og pkt. 3.3.3.

Klageren skulle således som følge af kapitaludvidelsen indbetale 1.612.000 kr. Indbetalingen blev foretaget med valør den 31. oktober 1994 og blev finansieret med klagerens låneoptagelse hos sit pengeinstitut.

Med valør den 20. december 1994 betalte Primera klagerens tilgodehavende, 1.555.202 kr. til klageren.

Ved aftale af 28. december 1994 solgte klageren og Stefan Karlborg samtlige deres anparter i Primera til Lennart Karlborg

**895**

A/S. Lennart Karlborg A/S var et selskab ejet af de tre brødre samt deres fader, Lennart Karlborg. Overdragelsessummen var aftalt til 267.000 kr. og fordeltes med 166.074 kr. til klageren og 100.926 kr. til Stefan Karlborg.

Klageren har ved indgivelsen af sin selvangivelse for indkomståret 1994 fratrukket tab i sin aktieindkomst vedrørende Primera på 1.467.926 kr.

Det selvangivne tab fremkommer således:

| | |
|---|---:|
| Køb anparter 1/7 1990, nom. 22.000 kr. a kurs 100 | 22.000 kr. |
| Køb anparter 1/9 1994, nom. 34.000 kr. a kurs 0 | 0 kr. |
| Anpartsudv. 31/10 1994, nom. 620 kr. a kurs 260. 000 | 1.612.000 kr. |
| Anskaffelsessum i alt | 1.634.000 kr. |
| Salgssum i alt | 166.074 kr. |
| Tab i alt | 1.467.926 kr. |

De stedlige skattemyndigheder har ved den påklagede ansættelse ikke godkendt det selvangivne aktietab på 1.467.926 kr. Myndighederne har i stedet forhøjet klagerens aktieindkomst med 33.912 kr. vedrørende anparter ejet over tre år og forhøjet klagerens kapitalindkomst med 53.364 kr. vedrørende anparter ejet under tre år. Der er henvist til ABL §§ 2, 4 og 5.

Myndighedernes avanceopgørelse fremkommer således:

| | |
|---|---:|
| Køb af anparter 1/7 1990, nom. 22.000 a kurs 100 | 22.000 kr. |
| Køb af anparter 1/9 1994, nom. 34.000 a kurs 0 | 0 kr. |
| Kapitaludv. 30/10 1994, nom. 620 kr. til det indbetalte beløb med fradrag af klagerens tilgodehavende, der indfries (1.612.000 kr. - 1.555.202 kr.) | 56.798 kr. |
| Anskaffelsessum for anparter i alt | 78.798 kr. |
| Salgspris i alt | 166.074 kr. |
| Fortjeneste | 87.276 kr. |
| som fordeles således: | |
| For anparter ejet *under* 3 år: 34.620/56.620 x 87.276 kr. beskattes som kapitalindkomst. | 53.364 kr. |
| For anparter ejet *over* 3 år: 22.000/56.620 x 87.276 kr. beskattes som aktieindkomst. | 33.912 kr. |

Myndighederne har bl.a. anført, at den foretagne kapitaludvidelse ikke kan anses for foretaget kontant, men reelt må anses for foretaget som en gældskonvertering, *at* klageren ved den skete fremgangsmåde har søgt at konvertere et ikke-fradragsberettiget formuetab på en fordring til et fradragsberettiget tab på anparter, *at* man ikke skattemæssigt skal acceptere den foretagne fremgangsmåde, *at* klagerens fordring i selskabet må anses at have været reelt værdiløs på konverteringstidspunktet. Der er henvist til TfS 1995.540 Lsr.

Klagerens advokat har over for Landsskatteretten nedlagt påstand om, at tab på anparterne, 1.467.926 kr., i klagerens aktieindkomst godkendes som selvangivet.

Han har til støtte herfor bl.a. gjort gældende, *at* tabet på anparter ejet under og over tre år skal behandles ens, hvorved er henvist til TfS 1996.654 H. Det er videre bl.a. anført, *at* der ikke er grundlag for at tilsidesætte den kontant foretagne og registrerede kapitalforhøjelse og anse den for sket ved gældskonvertering, *at* selskabet først den 28. december, d.v.s. ca. 3 måneder efter beslutningen om kapitaludvidelsen foretager indfrielse af selskabets gæld til anpartshaverne, *at* Skatteministeriet i en tilsvarende sag for Østre Landsret har taget bekræftende til genmæle, jf. TfS 1997.242, kommenteret i TfS 1997.249.

**Landsskatteretten skal udtale:**

Landsskatteretten finder med henvisning til, at skatteministeriet har taget bekræftende til genmæle i TfS 1997.242 ØLD, kommenteret i TfS 1997.249, i en sag, der principielt vedrører samme problemstilling som den foreliggende, at der ikke er grundlag for at anse den af klageren som kontant betegnende

foretagne kapitalforhøjelse som reelt foretaget ved gældskonvertering.

Retten skal vedrørende opgørelsen af tabet på anparterne i Primera indledningsvist bemærke, at opgørelsen finder sted i henhold til ABL § 6, jf. § 4, f.s.v.a. anparterne ejet under tre år, dog jf. ABL § 2, stk. 3, 2. pkt., som følge af, at der er tale om unoterede anparter afstået 18. november 1993 eller senere, jf. lov nr. 1117 af 22. december 1993 § 2, nr. 1, jf. § 16. Dette medfører bl.a., at avanceopgørelsen med fastsættelse af såvel anskaffelses- som afståelsessummer finder sted efter gennemsnitsmetoden.

Retten skal videre bemærke, at TfS 1996.654 H, hvortil advokaten har henvist, vedrører behandlingen af aktier, der er erhvervet ved udnyttelse af tildelte aktieretter og tegningsretter, jf. tidligere ABL § 6, stk. 8, i det omhandlede år ABL §§ 6, stk. 5, og 5, stk. 3. De anparter i Primera som klageren ved aftaler af 1. september 1994 købte af sin broder og Pestemi ApS, i alt nom. 34.000 kr., er ikke omfattet af disse bestemmelser. Det lægges derimod til grund, at klagerens erhvervelse af nom. 620 kr. ved kapitaludvidelsen den 30. september 1994 er sket som følge af udnyttelse af en tildelt tegningsret, jf. § 6, stk. 5. Disse nom. 620 kr. anparter skal forholdsmæssigt fordeles på de af klagerens anparter, der er ejet over og under 3 år, d.v.s. på nom. 22.000 kr. hhv. på nom. 34.000 kr., jf. ABL § 6, stk. 5. Klagerens tab på anparter ejet under tre år udgør herefter 891.230 kr., jf. ABL § 6, der kan modregnes og fremføres i avancer på tilsvarende papirer, jf. ABL § 2, stk. 2. På anparter ejet over tre år har klageren derimod ikke lidt et fradragsberettiget tab, idet der sker begrænsning af tabet som følge af, at klageren den 18. maj 1993 var mindretalsaktionær i Primera, jf. lov nr. 421 § 19, stk. 3, 3. pkt. Retten har herved efter oplysningerne om Primeras økonomiske forhold skønsmæssigt ansat handelsværdien af klagerens anparter i selskabet den 19. maj 1993 til 0 kr.

Den påklagede ansættelse ændres i overensstemmelse hermed.

**896**
*Herefter bestemmes:*

| | |
|---|---|
| *Indkomståret 1994* | |
| *Aktieindkomst* | |
| Ikke godkendt fradrag for selvangivent aktietab, 1.467.926 kr. | Stadfæstes. |
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet over 3 år med 33.912 kr., nedsættes til | 0 kr. |
| *Kapitalindkomst* | |
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet under 3 år med 53.364 kr., nedsættes til | 0 kr. |
| I stedet har klageren et fremførselsberettiget tab på anparter ejet under 3 år, jf. ABL § 2, stk. 2, der udgør | 891.230 kr. |
| . . .« | |

Den 27. august 1997 afsagde Landsskatteretten en tilsvarende kendelse vedrørende fastsættelsen af sagsøgeren Stefan Lennart Karlborgs indkomst for indkomståret 1994. De faktiske forhold ved Stefan Lennart Karlborgs erhvervelse og salg af anparter i Primera Invest af 1990 ApS svarer til omstændighederne beskrevet i landsskatteretskendelsen vedrørende Peter Karlborg. Der er i kendelsen vedrørende Peter Karlborg nærmere redegjort for, i hvilket omfang Stefan Lennart Karlborg har erhvervet og solgt anparter samt den efterfølgende fordeling af indskudskapitalen.

I landsskatteretskendelsen vedrørende Stefan Lennart Karlborg er det oplyst, at Stefan Lennart Karlborg den 31. december 1993 havde et tilgodehavende hos Primera Invest af 1990 ApS på 963.588 kr., at Stefan Lennart Karlborg som følge af kapitaludvidelsen med valør den 31. oktober 1994 indbetalte 988.000 kr., at beløbet blev finansieret med låneoptagelse i Stefan Lennart Karlborgs pengeinstitut, og at Primera Invest af 1990 ApS med valør den 20. december 1994 betalte Stefan Lennart Karlborgs tilgodehavende med 963.588 kr.

Af landsskatteretskendelsen vedrørende Stefan Lennart Karlborg fremgår i øvrigt:

». . .

Klagen vedrører opgørelsen af indkomsten på følgende punkt:

| | |
|---|---|
| *Indkomståret 1994* | |
| *Aktieindkomst* | |
| Ikke godkendt fradrag for selvangivent aktietab | 909.074 kr. |
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet over 3 år | 28.485 kr. |
| *Kapitalindkomst* | |
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet under 3 år | 16.029 kr. |
| . . . | |

Klageren har ved indgivelsen af sin selvangivelse for indkomståret 1994 fratrukket tab i sin aktieindkomst vedrørende Primera på 909.074 kr.

Det selvangivne tab fremkommer således:

| | |
|---|---:|
| Køb anparter 1/7 1990, nom. 22.000 kr. a kurs 100 | 22.000 kr. |
| Køb anparter 1/9 1994, nom. 12.000 kr. a kurs 0 | 0 kr. |
| Anpartsudv. 31/10 1994, nom. 380 kr. a kurs 260.000 | 988.000 kr. |
| Anskaffelsessum i alt | 1.010.000 kr. |
| Salgssum i alt | 100.926 kr. |
| Tab i alt | 909.074 kr. |

De stedlige skattemyndigheder har ved den påklagede ansættelse ikke godkendt det selvangivne aktietab på 909.074 kr. Myndighederne har i stedet forhøjet klagerens aktieindkomst med 28.485 kr. vedrørende anparter ejet over tre år og forhøjet klagerens kapitalindkomst med 16.029 kr. vedrørende anparter ejet under tre år. Der er henvist til ABL §§ 2, 4 og 5.

Myndighedernes avanceopgørelse fremkommer således:

| | |
|---|---:|
| Køb af anparter 1/7 1990, nom. 22.000 a kurs 100 | 22.000 kr. |
| Køb af anparter 1/9 1994, nom. 12.000 a kurs 0 | 0 kr. |
| Kapitaludv. 31/10 1994, nom. 380 kr. til det indbetalte beløb med fradrag af klagerens tilgodehavende, der indfris (988.000 kr. - 953.588 kr.) | 34.412 kr. |
| Anskaffelsessum for anparter i alt | 56.412 kr. |
| Salgspris i alt | 100.926 kr. |
| Fortjeneste | 44.514 kr. |
| som fordeles således: | |
| For anparter ejet *under* 3 år: 12.380/34.380 x 44.514 kr. | 16.029 kr. |
| der beskattes som aktieindkomst. | |
| For anparter ejet *over* 3 år: 22.000/34.380 x 44.514 kr. | 28.485 kr. |
| der beskattes som aktieindkomst. | |

. . .

Klagerens advokat har over for Landsskatteretten nedlagt påstand om, at tab på anparterne, 909.074 kr., i klagerens aktieindkomst godkendes som selvangivet.

. . .«

Bortset fra de forskelle, der følger af, at sagsøgerne ikke ejede lige mange anparter i Primera Invest af 1990 ApS, er Landsskatterettens præmisser i sagen vedrørende Stefan Lennart Karlborg identiske med præmisserne i sagen vedrørende Peter Karlborg.

Kendelsens konklusion er sålydende:

**897**

*»Indkomståret 1994*

*Aktieindkomst*

| | |
|---|---:|
| Ikke godkendt fradrag for selvangivet aktietab, | Stadfæstes. |
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet over 3 år med 28.485 kr., nedsættes til | 0 kr. |

*Kapitalindkomst*

| | |
|---|---:|
| Indkomsten samtidig forhøjet med beregnet avance for anparter ejet under 3 år med 16.029 kr., nedsættes til | 0 kr. |
| I stedet har klageren et fremførselsberettiget tab på anparter ejet under 3 år, jf. ABL § 2, stk. 2, der udgør | 320.846 kr. |

. . .«

Under denne sag, der er anlagt den 26. november 1997, har sagsøgerne principalt påstået sagsøgte, Skatteministeriet, tilpligtet at anerkende, at sagsøgeren Peter Karlborg ved opgørelsen af aktieindkomst for indkomståret 1994 kan fradrage aktietab med 1.467.926 kr., og at sagsøgeren Stefan Lennart Karlborg ved opgørelsen af aktieindkomst for indkomståret 1994 kan fradrage aktietab med 909.074 kr. Sagsøgerne har subsidiært nedlagt påstand om, at deres skatteansættelser for indkomståret 1994 hjemvises til fornyet behandling ved ligningsmyndighederne.

Sagsøgte har påstået frifindelse.

Sagsøgerne har til støtte for deres principale påstand gjort gældende, at sagsøgerne har opgjort tabet på deres anparter i Primera Invest af 1990 ApS korrekt, da anparterne skattemæssigt har været ejet i mere end tre år, således at beskatningen skal ske efter aktieavancebeskatningslovens § 4, stk. 4, jf. personskattelovens § 4a, stk. 1, nr. 4. Der er ikke hjemmel til den af skattemyndighederne foretagne opdeling ved en samlet afståelse af anparter. Sagsøgernes erhvervelse af anparter den 1. september 1994 er uden selvstændig betydning, da erhvervelsen skete til kurs 0, og da sælgerne ingen interesse havde i selskabet. Sagsøgerne opnåede fortegningsret til den samlede kapitaludvidelse allerede ved selskabets stiftelse i 1990, og de anparter, de erhvervede den 30. september 1994, skal i medfør

**898**

af aktieavancebeskatningslovens § 6, stk. 4, anses for erhvervet samtidig med moderanparterne i 1990. Det bemærkes, at sagsøgerne allerede inden erhvervelsen af anparterne den 1. september 1994 tilsammen ejede mere end 50% af anparterne og således havde mulighed for at træffe bestemmelse om kapitalforhøjelsen.

Såfremt landsretten ikke finder, at alle anparterne i skattemæssig henseende er erhvervet ved stiftelsen i 1990, bør der foretages en særskilt avanceberegning af anparterne erhvervet den 1. september 1994. I så fald skal sagen hjemvises til fornyet behandling ved ligningsmyndighederne. Endvidere skal sagen hjemvises, hvis landsretten finder, at § 19, stk. 3, i lov nr. 421 af 25. juni 1993 kan anvendes i nærværende sag. Da sagsøgte mangler hjemmel til den foretagne fordeling af anparter, bestrides det, at denne overgangsregel har betydning.

Dette må i givet fald dog alene gælde de ved stiftelsen fordelte anparter, da anparterne erhvervet ved kapitalforhøjelsen blev udstedt i kraft af en tegningsret, der først blev udnyttet efter den 18. maj 1993. Sagsøgerne er enige i, at anparternes handelsværdi den 19. maj 1992 var 0.

Sagsøgte har til støtte for sin påstand om frifindelse gjort gældende, at Landsskatterettens opgørelse af sagsøgernes aktieindkomst for 1994 er korrekt, og at sagsøgernes anbringende om, at ejertiden overstiger 3 år for alle de solgte anparter er uden hjemmel i loven. Det følger af de almindelige obligationsretlige regler, at »erhvervelse« i aktieavancebeskatningsloven sker på overdragelsestidspunktet, og det har ingen betydning, om overdragelsen den 1. september 1994, der skete ved underskrift af fondsnotaer, er sket til kurs 0. Da ejertiden er mindre end tre år for den del af sagsøgernes anparter, der er erhvervet den 1. september 1994, skal der foretages en forholdsmæssig fordeling af de den 30. september 1994 udstedte anparter i forhold til moderanparterne erhvervet henholdsvis den 1. juli 1990 og 1. september 1994, jf. aktieavancebeskatningslovens § 6, stk. 4. Ved avanceopgørelsen vedrørende moderanparterne erhvervet i 1990 får overgangsreglen i § 19, stk. 3, i ovennævnte lov betydning, idet anparternes handelsværdi den 19. maj 1993 må antages at have været 0. En samlet beregning fører til, at sagsøgerne - i overensstemmelse med resultatet i landsskatterettens kendelser - hverken kan fradrage et tab eller skal beskattes af en gevinst for så vidt angår anparterne erhvervet i 1990.

### Landsrettens begrundelse og resultat:

Aktieavancebeskatningslovens regler om tidspunkt for erhvervelse af anparter må - i overensstemmelse med de obligationsretlige regler - forstås således, at erhvervelsestidspunktet er ejendomsrettens overgang ved overdragelse eller på anden måde.

Sagsøgernes erhvervelse af anparter i Primera Invest af 1990 ApS den 1. september 1994 skete i overensstemmelse med udstedte fondsnotaer, der var underskrevet af såvel sagsøgerne som sælgerne, og sagsøgerne opnåede først på dette tidspunkt ejendomsret til de omhandlede anparter. Det findes at være uden betydning, at overdragelserne er sket til kurs 0, og sagsøgernes erhvervelsestidspunkt for disse anparter er således den 1. september 1994. De anparter, der blev udstedt ved kapitalforhøjelsen den 30. september 1994 skal i medfør af aktieavancebeskatningslovens § 6, stk. 4, anses for erhvervet samtidig med moderanparterne. Moderanparterne er anskaffet henholdsvis ved selskabets stiftelse den 1. juli 1990 og ved erhvervelsen den 1. september 1994, og de den 30. september 1994 nytegnede anparter skal herefter med hensyn til beregningen af anskaffelsestidspunktet fordeles forholdsmæssigt som sket ved Landsskatterettens kendelser. Herefter, og idet sagsøgerne ikke har anført omstændigheder, der kan begrunde, at sagen hjemvises som subsidiært påstået, tager landsretten sagsøgtes påstand om frifindelse til følge.

— — —

Sagsøgerne, Peter Karlborg og Stefan Lennart Karlborg, skal i sagsomkostninger en for begge og begge for en betale til sagsøgte 30.000 kr.

### Højesteret

### Højesterets dom.

I tidligere instans er afsagt dom af Vestre Landsrets 6. afdeling den 25. november 1999.

I pådømmelsen har deltaget fem dommere: Hornslet, Wendler Pedersen, Børge Dahl, Poul Søgaard og Jytte Scharling.

Appellanterne, Peter Karlborg og Stefan Lennart Karlborg, har frafaldet deres principale påstand og har alene påstået deres skatteansættelser for indkomståret 1994 hjemvist til fornyet behandling ved ligningsmyndighederne.

Indstævnte, Skatteministeriet, har nedlagt følgende påstand:

Skatteministeriet anerkender, at Peter Karlborgs og Stefan Lennart Karlborgs kapitalindkomst for indkomståret 1994 nedsættes med henholdsvis 6.326 kr. og 6.505 kr.

Sagen er behandlet skriftligt, jf. retsplejelovens § 387.

### Højesterets bemærkninger.

Højesteret tiltræder af de grunde, der er anført af landsretten, at de anparter, som appellanterne erhvervede den 1. september 1994, også skattemæssigt må anses for erhvervet på dette tidspunkt, og at de anparter, som de nytegnede den 30. september 1994, skal anses for erhvervet samtidig med moderanparterne og derfor fordeles forholdsmæssigt som sket ved Landsskatterettens kendelser.

Appellanternes tab på anparter ejet under tre år udgør herefter de beløb, som fremgår af Landsskatterettens kendelser.

Tabet vedrørende appellanternes beholdninger af anparter med en ejertid over tre år udgør forskellen mellem disse beholdnings

andel af henholdsvis afståelsessummen og den efter gennemsnitsmetoden beregnede anskaffelsessum. Da anparterne var værdiløse den 19. maj 1993, er tabet vedrørende appellanternes beholdninger på dette tidspunkt ikke fradragsberettiget, jf. overgangsbestemmelsen i § 19, stk. 3, i lov nr. 421 af 25. juni 1993. Det fradragsberettigede tab udgør derfor alene den del af det samlede tab, som svarer til forholdet mellem de i 1994 nominelt nytegnede anparter, der indgår i beholdningen med ejertid over tre år, og den samlede beholdning med ejertid over tre år. Dette tab udgør de beløb, som Skatteministeriet anerkender fradragsret for.

Herefter stadfæster Højesteret dommen med den ændring, som følger af Skatteministeriets påstand.

**Thi kendes for ret:**

*Landsrettens dom stadfæstes med den ændring, at indstævnte, Skatteministeriet, skal anerkende, at kapitalindkomsten for indkomståret 1994 for appellanterne, Peter Karlborg og Stefan Lennart Karlborg, nedsættes med henholdsvis 6.326 kr. og 6.505 kr.*

*I sagsomkostninger for Højesteret skal appellanterne en for begge og begge for en betale 30.000 kr. til indstævnte.*

*De idømte sagsomkostningsbeløb skal betales inden 14 dage efter denne højesteretsdoms afsigelse.*

Copyright © 2021 Karnov Group Denmark A/S